GILMORE PUCKETT GROCERY CO. *v.* J. LINDSEY WELLS COMPANY.

[60 South. 580.]

1. **STATUTES.** *Construction.* "*Fertilizer*". *Cottonseed meal.* *Unmixed cottonseed products.* *Code 1906, sections 1579-2244-2256-2258.*

   It is the duty of the courts to construe the statutes of the state so as to give full force and effect to them all; and it there is an apparent conflict between two statutes, the conflict must be reconciled, if it is possible to accomplish this end by reasonable construction.

2. **CODE 1906, SECTIONS 1579-2244-2256.** *Construction.*

   In a suit under Code 1906, section 2256, providing for a right of action for the sale of adulterated fertilizer for quadruple the price received or agreed upon; the court, construing sections 1579 and 2244 of the Code 1906, held that, while "cottonseed meal" produced by grinding the kernel of the seed alone, is an "unmixed cottonseed product," it is a fertilizer under the law, but that there are "unmixed cottonseed products" such as a product composed of equal parts of the pulverized kernel and hulls of cottonseed, which are not fertilizers and for the sale of which the penalty provided by Code 1906, section 2256 does not apply.

APPEAL from the chancery court of Monroe county.

HON. J. Q. ROBINS, Chancellor. ·

Suit by the Gilmore Pucket Grocery Company against the J. Lindsey Wells Company. From a judgment for defendant, plaintiff appeals.

The Gilmore Puckett Grocery Company purchased of the J. Lindsey Wells Company certain cottonseed meal, which was recommended as an excellent feed. The purchaser claimed that it was not up to representations in that it was a mixture of meal and hulls, and brought suit in the justice court for the difference between its real value and the purchase price, and recovered a judgment and collected same. While that suit was pending in the justice court, the state chemist seized the meal, condemned it, and sold it.

Afterwards appellant filed this attachment suit in chancery against the J. Lindsey Wells Company, a non-resident, and attached certain money found in a local bank. The prayer of the bill is for the penalty (quadruple the price received) as prescribed by section 2256 of the Code, which is as follows:  "Every manufacturer, owner, or agent, selling any spurious or adulterated fertilizer, or any fertilizer which shall lack materially in a valuable element represented to be therein, shall be liable to the person injured for quadruple the price received or agreed upon for the article sold." Section 2258 gives the state chemist authority to condemn and seize fraudulent fertilizers.  Section 2244, part of the chapter on "Fertilizers" defines fertilizers as follows: "The term 'fertilizer,' as used herein, includes all substances, chemicals, and compounds commonly known as commercial fertilizers, whether natural or artificial products, castor pomace, cottonseed meal, and all manures except animal excrement, but does not include cottonseed." Section 1579, being found under the chapter on "Definitions," defines a fertilizer to be as follows: "All substances, chemicals and compounds commonly known as commercial fertilizers

and all manures, whether natural or artificial products, except animal excrement, cottonseed and unmixed cottonseed products."

The appellee claims that he is not liable for the penalty provided by section 2256, for the reason that the product he sold is not a fertilizer, but feed stuff, and is not required to be analyzed or tagged, as it was "an unmixed cottoseed product," and fell within the exception set out in section 1579. The court found for appellee, basing its finding upon the fact that appellant had elected to sue in the justice court for the actual damage, and was therefore estopped from claiming the penalty in another suit.

*Leftwich & Tubb*, for appellant.   ·

As touching the construction of our statutes, they must all be read together and in the light of reason, and since all of them are in the interest of the public health of men and animals and against frauds they must be construed favorably to advance the remedy. Black on Interpretation of Laws, p. 313. The first statute on the subject is found in the Code of 1892, section 2065, where the term "fertilizer" is defined so as to include cottonseed and unmixed cottonseed products whether natural or artificial. The first legislature that dealth with this Code section was by the Sheet Acts of 1896, page 77, by which "castor pomace" was added to the products that should be called fertilizers. By the act of the legislature of 1904, Sheet Acts page 162, we have the first attempt at the classification of fertilizers, and by that classification there were two classes—high grade, which must contain phosphoric acid and potash as follows: ten per cent of available phosphoric acid, one and sixty-five hundredths per cent of nitrogen and two per cent of potash. The standard grade had the same constituents save that there must be eight per cent of available phosphoric acid, there being no offgrade. This act of 1904

was amended and became our chapter 51 of the Code of 1906. It must be plain that the reason that the legislature provided that all cottonseed meal should be classed and tagged as fertilizers was to prevent fraud and deceit, for the lawmakers saw that whenever fraud and deceit was used by the manufacturer and seller, of which this instant case is a palpable example, the wrongdoers would at once take refuge in the claim that they were dealing with feed stuffs and not with fertilizers, and to cut off this pretext the law was so written. The Laws of 1908, page 98, chapter 107, deal for the first time with commercial feed stuffs. The title of that act is, "An act to regulate the sale, inspection, and analysis of commercial feeding stuffs sold or offered for sale or use in the state of Mississippi." Section 14 of that act does not repeal section 2244 of our fertilizer chapter of the Code of 1906 nor does it in any way affect it and was never so intended. The fertilizer chapter now stands as it has always stood before the act of 1908 was passed, but whether it does or not, that chapter cannot affect this cause of action because it accrued before the passage of the act which was approved March 21, 1908. Since our state chemist, Dr. W. F. Hand, the head of the state department of chemistry, is more familiar with the history of the legislation along these lines than any other person in the state, and being a public official, we addressed to him a letter asking that he recite the history of fertilizer legislation and also give the department construction of the different acts. His reply is found in his letter to us under date of December 12, 1911, which is here copied in full as follows:

MISSISSIPPI AGRICULTURAL AND MECHANI-
CAL COLLEGE

DEPARTMENT OF CHEMISTRY, AGRICULTURAL COLLEGE,
MISSISSIPPI.

W. F. Hand, Ph.D., State Chemist.

December 12, 1911.

Messrs. LEFTWICH & TUBB,

Aberdeen, Miss.

Dear Sirs:

We acknowledge receipt of your letter of the 9th referring to the case of the Gilmore Puckett Grocery Company versus the J. Lindsay Wells Company.

The inspection of fertilizers in this state has been maintained since 1892, and of cottonseed meal since 1906. The fertilizer law of 1892 was amended by the legislature in 1906 to include the inspection of cottonseed meal. In defining what substance shall be included by the term "fertilizer," section 1579 of the Code of 1906 exempts cottonseed products, but a reference is contained in this same section to section 2244 of the Code of 1906, which section specifically declares that cottonseed meal is · a "fertilizer" as used within the meaning of the act. The fertilizer law of 1892 was amended in 1906, as stated before, and by act of the legislature at that time cottonseed meal was defined as a fertilizer, and section 2259 of the Code of 1906 provides that all commercial fertilizers (including cottonseed meal as provided for in section 2244) shall be branded high grade, standard grade or offgrade. Section 2260 establishes a standard for high grade cotton-seed meal; section 2261, a standard for standard grade cottonseed meal; and section 2263 requires that cotton-seed meal below the minimum requirement for "standard grade" meal shall be branded offgrade.

Now, since the fertilizer law of 1892 was amended by the legislature of 1906 to include cottonseed meal, though prior to this amendment cottonseed meal was excepted, and since sections 2260, 2261 and 2263 provide standards

for cottonseed meal, as they also establish standards for fertilizers, we have proceeded to make inspection of cottonseed meal in accordance with the amended fertilizer law, and no question has ever been raised as to the legality of requiring all cottonseed meal sold in the state to be guaranteed, analyzed, tagged, and inspected as are all other fertilizers and fertilizer materials.

When the feeding stuff law, chapter 107, senate bill No. 367, became effective on March 21, 1908, section 14 of the bill excepted cottonseed meal, and this was done for the reason that cottonseed meal was already defined by section 2244 of the Code as a fertilizer, and an inspection of it as a fertilizer had been maintained for two years. I brought this matter to the attention of the committee which had the bill in charge, and they inserted section 14, senate bill No. 367, so that there could be no conflict, the intention of the act being to allow the in-inspection of cottonseed meal as a fertilizer to continue. We have never inspected cottonseed meal, therefore, as a feeding stuff.

The records in our office show that during the season in which the J. Lindsay Wells Company sold the Gilmore Puckett Grocery Company cottonseed meal which was below guaranty, they had filed a guaranty and a sample on offgrade cottonseed meal in compliance with sections 2244, 2245 and 2263 of the Fertilizer Law as amended to include the inspection of cottonseed meal. The material which they sold as cottonseed meal was actually branded "cottonseed meal" as allowed and required by section 2263. Since they submitted to us a sample of this meal as required by section 2245, and also a guaranty on it, it is of course plain that they intended to sell it as cottonseed meal, and would have complied with all the requirements of the law had they not shipped the Gilmore Puckett Grocery Company an adulterated and fraudulent product, which did not meet the guaranty which they filed in our office. It should be borne in mind that this material sold

the Gilmore Grocery Company was branded cottonseed meal by the J. Lindsay Wells Company, and a guaranty for it as "cottonseed meal" was duly filed in our office, as required by the law, and a sample of this cottonseed meal was also filed in accordance with the law. Since it was sold, branded, and guaranteed as cottonseed meal, we inspected it, and found the shipment in the hands of the Gilmore Puckette Grocery Company, which was adulterated and fraudulent. Section 14, senate bill No. 367, Laws of 1908, of course can have no reference to this transaction, which took place prior to 1908.

We have always believed that the law requiring the inspection of cottonseed meal was plain and specific enough, and sellers of meal in this state have not questioned our authority of law for inspecting meal and requiring it to be guaranteed and tagged as are all other fertilizers. We ourselves pointed out to the legislature the necessity of suppressing frauds in the cottonseed meal trade, and we therefore know that the fertilizer law was amended in 1906 for the specific purpose of requiring the inspection of meal. No doubt has ever existed in our minds as to our authority under the law for maintaining this inspection of meal.

We are not lawyers here of course, but being familiar with the origin of the cottonseed meal amendments to the law, and therefore of the intention of the legislature to provide an inspection of cottonseed meal, we have always through that the wording and meaning of the laws relating to fertilizer, chapter 51, were plain enough.

Very respectfully yours,

W. F. HAND, State Chemist.

It will be seen from this letter, as well as the act itself, that the legislature in passing the act of 1908 did not intend and actually did not amend our chapter on Fertilizers at all.

Counsel in his brief says section 2263 of chapter 51 of the Code of 1906 has no reference to animal feeding

and foods, which is true, but we submit that appellees, as suggested by Mr. Hand, are estopped by their own construction of the law, and from their own acts in the premises from raising such questions. Appellees shipped this cottonseed meal into the state and sold it as cotton-seed meal and branded it as such, and filed their guaranty with the state chemical department, and recommended it as such. They did not pretend to disclose that which has now been proven on them, that the so-called cottonseed meal was one-half hulls, and the hulls were so ground and mixed with the meal as to take an expert to detect it, and this adulteration and counterfeit cottonseed meal they were putting off on the unsuspecting buyer in Mississippi as pure cottonseed meal was only one-half such. And now after the guilty defendant is caught, he complains for the first time that this was feed stuff and not commercial fertilizer at all. Defendants' own case and acts and correspondence and dealings with the buyers of Mississippi answer the contentions of his counsel on this point. Section 1317 of the Code of 1906 lately construed by this court must not be overlooked in connection with the whole subject. By that section it is made a misdemeanor "for any person or corporation to adulterate any cottonseed meal with hulls, sawdust or anything else without noting such adulteration in plain and legible characters on each sack, and it shall be unlawful for any person to sell in this state any cottonseed meal, adulterated with hulls, sawdust or anything else without such adulteration being noted in plain and legible characters on each sack or receptacle thereof." This section of the Code is still in force, and was held not only constitutional but the just and proper law in the late case of the *Alcorn Cotton Oil Company* v. *State*, 56 So. 397. Read this section in connection with our other statutes, and appellee is caught red-handed violating it, and should not be heard to complain of the infliction of the civil penalty when it seems so far to have escaped the criminal penalty.

*Wiley H. Clifton,* for appellee.

This was strictly a mixed cottonseed product, fifty per cent meal and fifty per cent hulls; and by the very language of our statutes is excepted from Chapter 51, Code 1906, regulating the sale of fertilizers.   In Section 2244. cottonseed meal is classed as a fertilizer but cottonseed itself is not.   We are referred to section 1579 (by 2244) which also defines what are fertilizers, and unmixed cottonseed products is not a fertilizer.   The Fiber Company that manufactures this foodstuff has machinery that grinds the cottonseed up and mixes it as ground, one half hulls and one half meal.   And in section 2263 it is only every package of cottonseed meal which contains less than four and ninety-five hundredths per cent of nitrogen, equivalent to six per cent of ammonia that shall have branded upon it the words "offgrade." This dosen't require the by-products of cottonseed made for feeding cattle to be tagged; and when we did have a commercial feedstuff statute the by products from cottonseed for feed stuff was excepted, acts 1908, p. 98.

Chapter 51 does not deal with animal feed stuff, and unmixed cottonseed products were needed for animal food and therefore specially excepted from all classes of fertilizers, just as cottonseed itself is.   Chapter 53 has no reference to animal food, and we had no statute regulating the sale of animal food at that time, and as this unmixed cottonseed product is a feed stuff for animals and sold by respondent as such it is idle to talk about section 2263 having any application to the case. A look at the history of this legislation demonstrates that unmixed cottonseed is not a fertilizer.

Acts of 1904, p. 162, amended this law as to grades of fertilizer and the words to be put on packages to designate the grades when it specially excepts cottonseed products from the operation of the act.   Code 1906, sections 2214 and 1579, excepts unmixed cotton-

seed products, but puts a tag or tax on cottonseed meal below a certain grade.  Code 1906, section 2263.  In Code 1892 unmixed cottonseed products is excepted in chapter on Definitions and Rules,  In Acts 1896 excepted in definition of fertilizers as in Code 1892 and in Act 1904, 163, section 5, cottonseed products excepted from the act.  It is clear then that the law has never intended that cottonseed and a feed stuff made of unmixed cottonseed products should be treated as a fertilizer; and if not, this penalty cannot be enforced in this case.  There must be a mixing of the cottonseed products with some other substance or meal only before it can be classed as fertilizer.  It is true that Mr. Hand, the state chemist, said it was a fertilizer and had to be tagged under chapter 51, Code 1906; but such statement was incompetent as the court only decides questions of law.  Professor Hand was doubtless honest in this opinion, but he couldn't have had much faith in it, for he released the shipment of this same to Hazlehurst and Bogue Chitta by appellee upon payment of costs and fees.

Messrs. Agee, Reed and Sessums. chemists, say that this meal made of hulls and meal is a better feed stuff than prime or cottonseed meal; and that when so mixed it can be distinguished from pure cottonseed meal with the naked eye.  It was not sold by appellee as a fertilizer but as a feed stuff.  The appellant didn't buy it for a fertilizer but for feeding purposes.  For in his letter of November 26, 1907, asking to cancel the order as to one car he gave as his reasons that on account of the panic certain sawmills had shut down and they were its best customers.  As a matter of fact appellant sold the bulk of ten and one-half tons of the meal for feeding purposes.  If it had been a fertilizer and sold as a fertilizer I would think the chancellors criticism of appellee just; but it being  a feed stuff and sold as a feed stuff I think his strictures on appellee and his

business unsupported by the evidence. It was not unlawful to sell as a feed stuff a by product of cotton seed made of hulls and meal without first filing with the state chemist a sample and guaranty and tagging the sacks.

Argued orally by *Geo. J. Leftwich,* for appellant.

Cook, J., delivered the opinion of the court.

There are several questions presented by this record, including the correctness of the theory upon which the chancellor based his decree dismissing appellant's bill of complaint. This action was begun by an attachment in the chancery court under sections 536 and 537 of the revised Code of 1906, to recover the penalty prescribed by section 2256 of the same Code. It seems that appellee sold a lot of so-called cottonseed meal to appellant, which was recommended as an excellent feed. Some question was raised as to whether or not the goods sold to appellant came up to representations, the appellant instituted suit against appelle for the difference between the actual value of the goods and the amount paid by appellant for same. After this suit was brought, but before it proceeded to judgment, the state chemist seized the so called meal under section 2258 of the Code of 1906, and by proper proceedings had the same condemned and sold. Appellant did not dismiss his suit, but proceeded to take judgment for actual damages, not claiming the penalty.

The chancellor decided the present suit against appellant, because, he said (in a written opinion), appellant was estopped to prosecute this suit; he having elected to sue for and collect actual damages without declaring for the penalty. The chancellor placed his opinion on the theory of equitable estoppel. Whether the decision should have beed grounded on equitable estoppel, *res judicata,* or because appellant could not split his cause of

action, and try one part in one court and the other part in another court, we will not now consider.

If the material sold was not a fertilizer under the laws of this state, this suit cannot be maintained; and it follows that the decree of the chancery court was correct, no matter what were the reasons controlling the court in· entering its decree.    There is an apparent conflict between section 1579 and section 2244 of the Code of 1906.    Section 1579 is a part of "Chapter 30.    Definitions and Rules."    Section 2244 is the first section of the chapter on "Fertilizers."    The question to be answered is:    Do the words "unmixed cottonseed products" include cottonseed meal, which section 2244 makes a fertilizer, subject to the regulations and penalties prescribed by the chapter on "Fertilizers"?

It is the duty of the court to construe the statutes of the state, so as to give full force and effect to them all; and if there is an apparent conflict between two statutes, the conflict must be reconciled, if it is possible to accomplish this end by reasonable construction. There is no reason for doubt that the legislature intended to and did classify cottonseed meal as a fertilizer. It is also beyond question that cottonseed meal is an "unmixed cottonseed product."    Both of these propositions being true, it would seem that section 1579 excludes cottonseed meal from classification as a fertilizer, while section 2244 expressly includes it in that classification. If there are "unmixed cottonseed products" other than cottonseed meal, it is manifest that section 1579 excludes such products from the definition of fertilizers.

As we understand the evidence in this case, the product sold by appellee is not such a product as could be termed cottonseed meal, and yet it certainly is a cottonseed product.    The evidence discloses that the product is composed of equal parts of the pulverized kernel, or meat, and of pulverized hulls, of the cottonseed.    It is unmixed with any foreign substance.    All that it

contains is produced by the cottonseed, and it is therefore, an unmixed or homogeneous product of cottonseed. The cottonseed meal is produced by grinding or pulverizing the kernel of the seed alone. By the two processes we get two distinct products of the cottonseed. The one is not a fertilizer under the law, and the other is a fertilizer. So it is cottonseed meal is one thing, while unmixed cottonseed products may be another thing. The legislature represented an agricultural people, whose chief product was cotton. It was found necessary to define fertilizers, and provide for the inspection of same and to prescribe penalties for violations of the regulations governing their sale.

Cottonseed meal is not only valuable as a food for animals, but is also valuable as a fertilizer of the soil; and to prevent its adulteration as a fertilizer, its shipment and sale was regulated by statute. The cottonseed itself is also a valuable fertilizer, but it is expressly provided that it is not to be classified as such. The cottonseed product known as cottonseed meal is the product most useful and valuable as a fertilizer, and it was, therefore, placed in that class for the protection of our farmers using it as a fertilizer, as well as for the protection of our own mills against adulterated products shipped into the state and sold as cottonseed meal. It should be, and undoubtedly was, the policy of the legislature to conserve the interests of the cotton planter, and to provide for other commodities which could be produced from the cottonseed, and which could not be used to advantage as a fertilizer, and such products were classed as "unmixed cottonseed products," and the product the subject of this litigation falls within that definition. This construction harmonizes the two statutes, and to our minds it is a most reasonable construction.

*Affirmed.*